### RIVERA-CRUZ v. GRAY, Secretary of State (2 cases).
### Nos. 15796, 15827.

Circuit Court, Leon County.

April 4, 1958.

Rafael A. Rivera-Cruz and C. Carey Mathews, both of Miami, for plaintiffs.

Richard W. Ervin, Attorney General, Wilson W. Wright, Special Ass't. Atty. Gen'l., Fred M. Burns, Ass't. Atty. Gen'l., Ralph M. McLane, Ass't. Atty. Gen'l., all of Tallahassee, and George John Miller, Miami, for defendant.

W. MAY WALKER, Circuit Judge.

The extraordinary session of the 1957 legislature adopted fifteen separate and distinct joint resolutions proposing for ratification or rejection by the electors of Florida at the next general election, a revision of the preamble and each and every article of the state constitution, except article V. If the proposed revision be legally adopted the constitution will consist of a preamble and fourteen articles, instead of the present preamble, one unnumbered article and twenty numbered articles, and will bear the short title of "Florida Constitution of 1958."

Rafael A. Rivera-Cruz instituted this suit designed, among other things, to have the Secretary of State enjoined from expending any more public funds for the printing or publication of such proposed revision, and from certifying and submitting the same to the electorate of Florida at the 1958 general election.

The suit is predicated on the theory and contention, among others, that the method employed by the legislature to initiate or submit the proposed revision constitutes a violation of the present constitution, particularly article XVII thereof, and denies the right of the people to decide the question of revision under and pursuant to the constitutional convention method provided for in section 2 of said article.

Plaintiff also in his brief and oral argument before the court insists that the proposed revision is invalid because of the so-called "daisy-chain" section appearing in each amendment of the group of fourteen constituting the preamble and articles I through IV and VI through XIV of the proposed revision.

Since the institution of the Rivera-Cruz case, the Honorable Verle A. Pope, a Senate member of said legislative session, has instituted a similar suit against the defendant, and has raised the same questions as are raised in the other case.

The defendant has filed in each case an answer, in addition to other pleadings, admitting, in effect, all factual averments of the complaints but denying the unconstitutionality or invalidity of any part of the proposed revision.

Upon motion for consolidation of the two cases by the plaintiff Pope and upon further agreement of counsel for the respective parties, the cases have been consolidated, argued at final hearing, and submitted for a final decree upon the pleadings and the memorandum briefs filed in the cause.

Counsel for the plaintiff argue, among other things, that the so-called "daisy-chain" is unsound, and that the admission that such provision bars the effectiveness of all fourteen proposed amendments unless all of them be adopted constitutes strong evidence that the proposed revision is a violation of section 2 of article XVII of our present constitution.

In the proposed amendment for the revision of the preamble of the constitution, the "daisy-chain" provision is as follows—

"This preamble is one of a group of fourteen amendments proposed at the same session of the legislature and submitted to the electors at the same election, and it shall not become effective or a part of the constitution unless the electors adopt simultaneously with this preamble the amendments constituting respectively articles I through IV and VI through XIV. This paragraph is an integral part of the preamble and the entire preamble shall be invalid if this paragraph is held invalid."

Likewise, in each of the other proposed amendments of the "group of fourteen," a similar paragraph with like meaning and effect appears.

Each proposed amendment embracing the "daisy-chain" provision was approved and submitted by a majority vote of more than three-fifths of the members elected to each house of the legislature.

Moreover, in submitting each of the proposed amendments the legislature, also by a majority vote of more than three-fifths of the members elected to each house, solemnly resolved, among other things, as follows—

"Section 2. The legislature finds as a fact that the interlocking details and the framework of the constitutional provisions contained in the fourteen joint resolutions constituting the preamble and articles I through IV and VI through XIV of the proposed revised constitution are such that it would be impracticable to have the provisions of any of them become operative unless all of them are presented at the same election and are adopted thereat, and that the constitutional amendment proposed in this joint resolution should not become effective unless the electors adopt each of said fourteen proposed amendments at the same election.

"Section 3. The secretary of state is directed to prepare ballots for voting upon said fourteen proposed amendments at the same election in such manner that each elector may by a single vote cast his vote for approval or rejection of all of them and also in such manner that each elector may, in the alternative, cast his vote for approval or rejection of any one of them.

"Section 4. Upon rejection of one or more of said fourteen proposed amendments each of them shall by its terms not become effective. This entire resolution shall not become effective if any portion thereof is held invalid."

So these and other provisions in the legislative proceedings relating to the proposed constitutional revision make the meaning and purpose of the "daisy-chain" provision abundantly clear.

Whether the "daisy-chain" section be wise or unwise, sound or unsound, or desirable or undesirable, is no ground for intervention by the courts. The courts have nothing to do with the wisdom or policy of proposed constitutional amendments.

The "daisy-chain" is no more than a provision making the effectiveness of each proposed amendment contingent upon the effectiveness or ratification of all fourteen. Such contingencies have frequently appeared in statutes and have been upheld by high and respectable authority. In Gaulden v. Kirk, 47 So. 2d 567, the Florida Supreme Court, among other things, said—

"The universal rule is that, 'In the absence of constitutional or statutory provisions to the contrary, statutes may become effective on the happening of certain conditions or contingencies specified in the act, or implied therefrom.' 59 C. J. 1156, section 688; Town of San Mateo City v. State ex rel. Landis, 117 Fla. 546, 158 So. 112; Brown v. City of Tampa, 149 Fla. 482, 6 So. 2d 287." (See also 82 C. J. S. 978, Statutes, section 410).

Stated conditions or contingencies in proposed constitutional amendments have been upheld. 11 Am. Jur. Constitutional Law, § 24 p. 629; 16 C.J.S. Constitutional Law, § 9, p. 58, and notes 53 and 54. Such contingencies when found in proposed constitutional changes rest upon the same support in reason and authority that support them when appearing in statutory enactments.

No contention is made that the contingency complained about may reasonably mislead or confuse the electorate. The proposition is undisputed that the proponents of the amendments are confronted with the positive and unmistakable challenge that all

fourteen of the amendments must be ratified by a majority of the electors or each and every one will be rejected. The opponents are faced, on the other hand, with the assurance that if one or more be struck down by the ballot all the rest will be rejected or put to sleep.

So, obviously, the only contingency upon which the effectiveness of each amendment depends is the will of the people, and the so-called "daisy-chain" reflects no other kind of contingency and is, therefore, valid and far from being obnoxious to any provision of the present constitution.

While the article of the constitution dealing with the method of submitting constitutional amendments or revisions must be complied with, it is well settled that the people have the right to change, abrogate, or modify the constitution in any manner they see fit so long as they do not violate the federal constitution.

Section 2 of the Declaration of Rights, of our present constitution, ordains as follows — "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the citizens, and they have the right to alter or amend the same whenever the public good may require it; * * *."

Consistent with these organic principles, and applicable to the instant case, is the sound enunciation by the Florida Supreme Court, through Mr. Justice Terrell, now Chief Justice, in Gray v. Golden, 89 So. 2d 785, as follows—"Another thing we should keep in mind is that we are dealing with a constitutional democracy in which sovereignty resides in the people. It is their Constitution that we are construing. They have a right to change, abrogate or modify it in any manner they see fit so long as they keep within the confines of the Federal Constitution."

The contention that the submission of the proposed revision violates the constitutional convention method of revision under section 2 of article XVII, supra, which provides a method for delegating the responsibility of revision to chosen delegates at a convention duly called, is untenable.

Section 1 of article XVII of the constitution under which the proposed amendments are submitted follows—

"Method of Amending Constitution.—Either branch of the Legislature, at any regular session, or at any special or extra-ordinary session thereof * * *, may propose the revision or amendment of any portion or portions of this Constitution. Any such revision or amendment may relate to one subject or

any number of subjects, but no amendment shall consist of more than one revised article of the Constitution.

"If the proposed revision or amendment is agreed to by three-fifths of the members elected to each house, it shall be *** thereupon submitted to the electors of the State for approval or rejection at the next general election, * * *."

There is no contention in the instant case that the proposed amendments are repugnant to the federal constitution, and a perusal of the very language of section 1, article XVII, supra, providing a method for amending or revising the state constitution, impels this court to the conclusion that the method of proposing the amendments is consistent with our fundamental law, in letter and in spirit, and the proposed amendments must, under the mandate of our present constitution, be submitted for ratification or rejection by the direct voice of the people, the sovereign and supreme authority for deciding constitutional changes.

It follows, therefore, that the equities of the cause are with the defendant and against the plaintiffs, and that the injunction prayed for should be denied and the bill of complaint in each case dismissed. It is so ordered.